COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
SENIOR MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: July 24, 2025
Date Submitted: July 16, 2025

Joseph B. Cicero, Esquire
Ryan M. Lindsay, Esquire
Dakota B. Eckenrode, Esquire
Chipman Brown Cicero & Cole, LLP
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

Alexandra D. Rogin, Esquire
Paul S. Seward, Esquire
Eckert Seamans Cherin & Mellot, LLC
222 Delaware Ave., Suite 700
Wilmington, DE 19801

Re:  *GreenMarbles, LLC, et al. v. Clint Cushing*,
C.A. No. 2025-0282-SEM

Dear Counsel:

Pending before me are the parties' cross-motions for summary judgment. The dispute is one of contract interpretation and, at its core, whether the plaintiffs are entitled to advancement. Finding the language before me unambiguous and the defendant's interpretation the only reasonable interpretation thereof, I rule in favor of the defendant. The plaintiffs are not entitled to advancement, nor any of the alternative or ancillary relief sought. This is my final report.

## I.    BACKGROUND

This is an advancement action brought by GreenMarbles, LLC (the "Company"), Jeff Holowaty, and Kelly Holowaty (together, the "Plaintiffs") against Clint Cushing (the "Defendant"). The matter proceeded before me on an expedited

basis; the complaint was filed on March 13, 2025,[1] it was reassigned to me on June 23, 2025,[2] and I heard oral argument on the parties' cross-motions for summary judgment on July 16, 2025.[3] The factual predicate is undisputed.

## A.    The Agreements

The Company acquired the Defendant's interests in NOMO HUB, LLC, NOMO ENERGY HUB, LLC, NOMO PROS, LLC, and PROXI, LLC in May of 2022 (the "NOMO Transaction") through several distinct, but interrelated agreements. Only one is essential to my ruling herein—the "Subscription Agreement."[4] Section 3 provides:

> The Subscriber [(the Defendant herein)] hereby agrees to indemnify and hold harmless the Company and any of its officers, members, managers, employees, agents or affiliates (collectively the "Indemnified Parties" and individually an "Indemnified Party") who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, against losses, liabilities and expenses of each Indemnified Party (including attorneys' fees, judgments, fines and amounts paid in settlement, payable as incurred) incurred by such person or entity in connection with such action, arbitration, suit or proceeding, by reason of or arising from (i) any

---

[1] Docket Item ("D.I.") 1.

[2] D.I. 14.

[3] D.I. 20; *see* D.I. 10–11, 15–16 (cross-motions for summary judgment briefing).

[4] *See* D.I. 10 Ex. 3 (Subscription Agreement); D.I. 11 Ex. 2 (same). The parties also, to some extent, joined issue on what they defined as the "Purchase Agreement," *see* D.I. 10 Ex. 2 *and* D.I. 11 Ex. 1, but because the Plaintiffs rely solely on the Subscription Agreement in seeking relief, and on that basis their quest fails, I do not address the Purchase Agreement herein.

misrepresentation or misstatement of facts or omission to represent or state facts made by the Subscriber, including, without limitation, the information in this Agreement, or (ii) litigation or other proceeding brought by the Subscriber against one or more Indemnified Party in which the Indemnified Party is the prevailing party.

## B. The Dispute

Less than two years after the NOMO Transaction closed, the parties began litigating alleged fraud related thereto. The Defendant took the first swing, suing the Plaintiffs in this Court on December 19, 2024 for fraud and other claims related to the NOMO Transaction.[5] The Plaintiffs initially moved to dismiss,[6] but, instead of litigating the motion, the parties stipulated to transfer the case to the Superior Court's Complex Commercial Litigation Division ("CCLD").[7]

The Defendant initiated the anticipated CCLD action on April 30, 2025[8] (the "Underlying Action"), and later amended his complaint therein on May 1, 2025.[9] Through his amended complaint, the Defendant alleges that the Plaintiffs engaged in fraud, or were unjustly enriched, in connection with the NOMO Transaction,

---

[5] *Cushing v. Holowaty*, C.A. No. 2024-1316-NAC [hereinafter "Chancery Action"], D.I. 1.

[6] Chancery Action, D.I. 11.

[7] Chancery Action, D.I. 17–18.

[8] *Cushing v. Holowaty*, N25C-04-299-KMM-CCLD [hereinafter "Underlying Action"], D.I. 1.

[9] Underlying Action, D.I. 2.

along with other claims.[10] To date, the Underlying Action is ongoing, and the parties are currently briefing a partial motion to dismiss.[11]

### C. The Demand

On February 5, 2025, the Plaintiffs served a demand for advancement on the Defendant asserting entitlement to mandatory indemnification and advancement of their cost of defense of the Underlying Action, under Section 3 of the Subscription Agreement.[12] The Defendant denied the request through counsel in a one-paragraph response on February 11, 2025, stating simply that counsel "disagree[s] that [the Defendant] is required to advance fees incurred . . . . [and] [a]ccordingly, [the Defendant] denies the . . . request."[13] With the Defendant standing firm, the Plaintiffs initiated this action on March 13 of this year.

## II. ANALYSIS

The parties have cross-moved for summary judgment under Court of Chancery Rule 56(c), under which the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[10] *Id.*

[11] *See* Underlying Action, D.I. 7, 9.

[12] D.I. 11 Ex. 4.

[13] D.I. 11 Ex. 5.

material fact and that the moving party is entitled to judgment as a matter of law." Generally, the Court must view the evidence in the light most favorable to the non-moving party.[14] But where, as here, the parties have filed cross-motions for summary judgment and have not presented argument to the Court that there is any issue of fact material to the disposition of either motion, the motions are deemed the equivalent of a stipulation for decision on the merits based on the record submitted therewith.[15]

The parties' cross-motions seek resolution of all counts in the Plaintiffs' complaint—(1) advancement ("Count I"), (2) in the alternative, specific performance ("Count II"), and (3) reimbursement of fees and costs in connection with this action ("Count III"). I address Count I and Count II in turn, and find the Defendant entitled to judgment in his favor on both. Count III, which is premised on the Plaintiffs' success on Count I, falls and, as such, judgment should be entered in the Defendant's favor and this action should be dismissed in full.

> **A. Section 3 of the Subscription Agreement does not provide the Plaintiffs with advancement rights.**

Count I is for advancement. As with all advancement actions, I must focus on the language of the governing instrument—here the Subscription Agreement—to

---

[14] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99–100 (Del. 1992).

[15] Ct. Ch. R. 56(h).

determine entitlement.[16] Consistent with Delaware's contract-interpretation principles, if unambiguous, I look solely to "the plain meaning of the advancement provision[.]"[17]

> Section 3 of the Subscription Agreement is unambiguous. It provides:

> The Subscriber [(the Defendant, herein)] hereby agrees to indemnify and hold harmless the Company and any of its officers, members, managers, employees, agents or affiliates (collectively the "Indemnified Parties" and individually an "Indemnified Party") who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, against losses, liabilities and expenses of each Indemnified Party (including attorneys' fees, judgments, fines and amounts paid in settlement, payable as incurred) incurred by such person or entity in connection with such action, arbitration, suit or proceeding, by reason of or arising from (i) any misrepresentation or misstatement of facts or omission to represent or state facts made by the Subscriber, including, without limitation, the information in this Agreement, or (ii) litigation or other proceeding brought by the Subscriber against one or more Indemnified Party in which the Indemnified Party is the prevailing party.

The Plaintiffs appreciate that, at first read, this provision reads as indemnification, a related but distinct concept from advancement.[18] But they point me to the language "payable as incurred" and advocate for advancement; I find that a leap too far.

---

[16] *Rhodes v. bioMérieux, Inc.*, 2024 WL 669034, at *11 (Del. Ch. Feb. 19, 2024).

[17] *Sr. Tour Players 207 Mgmt. Co. v. Golftown 207 Hldg. Co.*, 853 A.2d 124, 127 (Del. Ch. Mar. 10, 2004).

[18] Indemnification and advancement are "distinct types of legal rights." *Id.* at 128 (citation modified). Indemnification rights spur "upon the conclusion of a matter or upon resolution of one of more claims[,]" whereas those for advancement accrue "prior to the end of the

True, advancement does not require magic words, but it requires contractual language "expressly stat[ing]" an "intention to mandate advancement."[19] To argue that Section 3 falls within this framework, the Plaintiffs cherry pick quotes from cases like *Batty v. UCAR International Inc.*,[20] *Martinez v. Regions Financial Corp.*,[21] and *Emerging Europe Growth Fund, L.P. v. Figlus*.[22] These cases are not nearly as supportive as the Plaintiffs posit.

In *Batty*, then-Vice Chancellor McCormick did note the typical use of the contractual phrase "as incurred" to signal advancement rights.[23] But she found that the contract before her created a right to indemnification, not advancement.[24] The language read:

> Fees and Expenses. The Company shall pay all legal fees and related expenses incurred [1] by you as a result of your termination following a Change in Control of the Corporation or [2] by you in seeking to obtain or enforce any right or benefit provided by this Agreement (including all fees and expenses, if any, incurred in contesting or

---

matter or resolution of certain claims." *Batty v. UCAR Int'l Inc.*, 2019 WL 1489082, at *8 (Del. Ch. Apr. 3, 2019) (citation modified).

[19] *Fillip v. Centerstone Linen Servs., LLC*, 2013 WL 6671663, at *5 (Del. Ch. Dec. 3, 2013), *as corrected* (Dec. 11, 2013) (citation modified).

[20] 2019 WL 1489082.

[21] 2009 WL 2413858 (Del. Ch. Aug. 6, 2009).

[22] 2013 WL 1250836 (Del. Ch. Mar. 28, 2013).

[23] 2019 WL 1489082, at *9.

[24] *Id.*

disputing any such termination or incurred by you in seeking advice in connection therewith).[25]

In so holding, she explained that "[t]o create a right to payment of costs and attorneys' fees in advance of final determination of the underlying claims, contracting parties use variants of the word 'advance' or phrases such as 'as incurred.'"[26] Because the operative provision lacked such language, she determined it did not confer advancement rights.[27]

The Plaintiffs also direct me to *Martinez*, through which Vice Chancellor Parsons granted a former employee's motion for summary judgment as to her advancement rights.[28] The relevant contract language read:

> The Company agrees to pay as incurred, to the full extent permitted by law, all legal fees and expenses which the Executive may reasonably incur as a result of any contest (regardless of the outcome thereof) by the Company, the Executives or others of the validity or enforceability of, or liability under, any provision of this Agreement or any guarantee of performance thereof (including as a result of any contest by the executive about the amount of payment pursuant to this Agreement), plus in each case interest on any delayed payment at the applicable Federal rate provided for in Section 7872(f)(2)(A) of the Internal Revenue Code of 1986, as amended (the "Code").[29]

---

[25] *Id.* at *8 (brackets in original).

[26] *Id.* at *9.

[27] *Id.*

[28] 2009 WL 2413858.

[29] *Id.* at *4.

In deciding the language conferred advancement rights on the former employee, the Vice Chancellor noted the language providing for payment "as incurred" and regardless of the outcome of a covered contest.[30]

Finally, the Plaintiffs urge me to consider *Emerging Europe*, wherein Vice Chancellor Parsons assessed contractual language, ultimately explaining it provided both advancement and indemnification rights.[31] In relevant part, the agreement read:

> The Subscriber will, to the fullest extent permitted by applicable law, indemnify each Indemnified Party and the Partnership against any losses, claims, damages or liabilities to which any of them may become subject in any capacity in any action, proceeding or investigation arising out of or based upon any false representation or warranty, or breach or failure by the Subscriber to comply with any covenant or agreement made by the Subscriber herein, or in any other document furnished to the General Partner or the Partnership by the Subscriber in connection with the offering of the Interests. The Subscriber will reimburse each Indemnified Party and the Partnership for legal and other expenses (including the cost of any investigation and preparation) as they are incurred in connection with any such action, proceeding or investigation.[32]

The Vice Chancellor hinged his determination on the requirement to reimburse expenses "as they are incurred," citing to *Majkowski v. American Imaging Management Services, LLC* for the proposition that "[a]dvancement . . . is a right

---

[30] *Id.* at *13.

[31] 2013 WL 1250836, at *5.

[32] *Id.*

whereby a potential indemnitee has the ability to force a company to pay his litigation expenses *as they are incurred*."[33]

At most, these cases emphasize that contractual language providing for payment of expenses "as incurred" may be interpreted as advancement, when the provision reflects a right to payment before final determination. The cases on which the Defendant relies clarify when that pre-determination right is not present. For example, cases like *Winshall v. Viacom International, Inc.*, from the Delaware Supreme Court, emphasize that "an 'indemnify and hold harmless' clause does not confer a right of advancement[.]"[34] In *Winshall*, the Delaware Supreme Court refused to read the following provision as advancement:

> Parent shall give the Stockholders' Representative written notice of any claim, suit, investigation, action, assertion, event or proceeding by or in respect of a third party as to which a Parent/MergerCo Indemnified Party may request indemnification pursuant to Section 8.2(a). . . . Parent shall have the right to direct . . . the defense or settlement of any such claim at the expense of the applicable indemnifying parties.[35]

The court explained that Delaware law distinguishes the "legally distinct concepts of advancement and indemnification[,]" and that an "indemnify and hold harmless

---

[33] *Id.*

[34] 76 A.3d 808, 822 (Del. 2013) (citation modified).

[35] *Id.* at 821.

clause" does not confer advancement rights.[36] Likewise, then-Magistrate Legrow

explained in *Fillip v. Centerstone Linen Services, LLC*, that it would be "difficult to

conclude" that language providing for an obligation to "indemnify and hold

harmless" extended to advancement obligations.[37] There, the language at issue

provided:

> 3.7. INDEMNIFICATION. The Company shall indemnify, defend and hold harmless each Manager and Officer for all costs, losses, liabilities, and damages whatsoever paid or incurred by such Manager or Officer in the performance of his duties in such capacity, including, without limitation, reasonable attorney's fees, expert witness and court costs, to the fullest extent provided or permitted by the [Delaware Limited Liability Company] Act or other applicable laws. Further, in the event fraud or bad faith claims are asserted against such Manager or Officer, the Company shall nonetheless bear all of the aforesaid expenses subject to the obligation of such Manager or Officer to repay all such expenses if they are finally determined to have committed such fraud or bad faith acts.[38]

The then-Magistrate noted that, if the agreement before her lacked the word

"defend" in the first cited sentence, referring only to the obligation to "indemnify

and hold harmless," that it "would be difficult to conclude that [the language]

provided broad advancement rights to managers and officers, because . . . that phrase

---

[36] *Id.* at 822.

[37] 2013 WL 6671663, at *6.

[38] *Id.* at *5.

does not require a company to advance litigation expenses."[39] She came to her decision in light of *Majkowski*, through which then-Vice Chancellor Strine expressly noted that such language does not "require a company to advance litigation expenses."[40] The *Majkowski* language was as follows:

> *Indemnification of Member(s).* The Company shall indemnify and hold harmless the member(s) and their affiliates . . . and their respective directors, officers, and constituent partners, employees and advisors and other representatives (individually an "Indemnitee"), as follows:
>
> (a) In any threatened, pending, or completed action . . . to which an Indemnitee was or is a party or is threatened to be made a party by reason of the fact that such Indemnitee is or was a member or an affiliate of a member . . . or a director, officer, employee, or constituent partner of a member or an affiliate of a member, . . . the Company shall indemnify such Indemnitee against attorneys' fees, judgments, fines, penalties, settlements, and reasonable expenses actually incurred by such Indemnitee in connection with the defense or settlement of such action, suit, or proceeding, if such Indemnitee acted in good faith . . . [and] in a manner reasonably believed by such Indemnitee to be in the best interests of the Company.[41]

The then-Vice Chancellor, in *Majkowski*, rejected the plaintiff's contention that the phrase "hold harmless" is ambiguous, and should thus be read in favor of advancement rights.[42] Rather, he explained that "indemnify and hold harmless" "is

---

[39] *Id.* at *6.

[40] *Id.* (referring to the Court's ruling in *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 587–88 (Del. Ch. 2006)).

[41] *Majkowski*, 913 A.2d at 587.

[42] *Id.* at 592.

a legal term of art that does not include the unique concept of advancement as it functions within the rubric of Delaware's law of limited liability companies."[43]

Altogether, these cases provide tangible examples of foundational Delaware law—"contracts must be read as a whole to give effect to each term."[44] I apply that principle to the provision before me with the benefit of this precedent. Looking first at the Plaintiffs' cases (*Batty*, *Martinez*, and *Emerging Europe*), it is clear that a provision needs more than the simple inclusion of "as incurred" to qualify as advancement; I must find, upon a holistic review, a promise to pay in advance of a final determination. That is not apparent from the provision here.

Rather, like the cases cited by the Defendant (*Winshall*, *Fillip*, *Majkowski*, and *Altenberg*), I have a provision that uses the indemnification term of art, which has a well-established and well-worn meaning. Section 3 of the Subscription Agreement is quite clearly an "indemnify and hold harmless" provision—its words unambiguously provide as such. I decline to extend this provision beyond its plain meaning and frustrate the distinction between advancement and indemnification.

---

[43] *Id.*

[44] *Fillip*, 2013 WL 6671663, at *5.

At bottom, Section 3 does not provide for advancement.[45] Because the Plaintiffs' requests for fees-on-fees and prejudgment interest in Count III were premised on advancement, they are similarly denied.[46]

### B. The Plaintiffs are not entitled to specific performance.

As an alternative count, the Plaintiffs seek specific performance of Section 3 of the Subscription Agreement, even if not interpreted as advancement. This request must be denied, and this claim must be dismissed as premature, at best.

"[S]pecific performance is a remedy for a proven breach of contract."[47] To prevail, a party must establish that: "(1) a valid contract exists, (2) he is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance."[48] As explained above, Section 3 does not provide for

---

[45] Having determined that Section 3 does not entitle the Plaintiffs to advancement, I need not wade into the Defendant's argument that his claims in the Underlying Action do not arise out of the Subscription Agreement. *See* D.I. 10 at 17–18. I also decline to discuss the Defendant's public policy arguments, which are irrelevant given the plain language of the relevant provision, which I find unambiguous.

[46] *See Thompson v. ORIX USA Corp.*, 2016 WL 3226933, at *7 (Del. Ch. June 3, 2016) ("Plaintiffs who successfully prosecute an advancement suit are generally entitled to an appropriate award of fees for the expenses incurred in litigating the suit, unless the parties have agreed otherwise."); *Rhodes*, 2024 WL 669034, at *15 ("Pre-judgment interest is awarded for the period of time when [a party] unjustifiably refuse[s] to provide advancement.") (citation modified).

[47] *S'holder Rep. Servs. LLC v. Renesas Elecs. Corp.*, 2024 WL 5192070, at *20 (Del. Ch. Dec. 3, 2024) (citation modified).

[48] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

advancement; thus, the request for specific performance sounds in indemnification.

But "[u]nder Delaware law, claims for indemnity are regarded as not ripe until the liability for which indemnification is sought is determined."[49] Liability is not determined until "the conclusion of a matter or upon resolution of one of more claims."[50]

Here, the Plaintiffs have not demonstrated that liability for which indemnification is sought has been determined. Rather, the Underlying Action is ongoing, making the request unripe; Count II must be dismissed.[51]

---

[49] *Brudno v. Wise*, 2003 WL 1874750, at *4 n.9 (Del. Ch. Apr. 1, 2003); *see also LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 198 (Del. 2009) ("Indemnification claims do not accrue until the underlying claim is finally decided").

[50] *Batty*, 2019 WL 1489082, at *8 (citation modified).

[51] In so holding, I am rejecting the Plaintiffs' argument that the Defendant failed to respond directly to Count II and should be barred from any challenge thereto. The Defendant's position was clear that Section 3 provides solely for indemnification and that this current action seeking advancement is misplaced. I agree and find the action should be dismissed in full. This dismissal should not operate as a bar to any future, ripe requests for indemnification. Likewise, because I am finding in his favor on all counts in the Plaintiffs' complainnt, I need not address the Defendant's purported affirmative defenses.

## III.    CONCLUSION

For these reasons, the Defendant's motion for summary judgment is granted and the Plaintiffs' denied. Judgment shall be entered in favor of the Defendant unless expedited exceptions are timely filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Senior Magistrate in Chancery